## JOHN BRIDGE *versus* JEDUTHUN WELLINGTON.

A party objecting to a witness cannot examine him on the *voir dire* after an attempt to prove his interest otherwise. Estoppel: A deed which on the face of it purports to be a defeasance, and to be executed at the same time with the other, estops both parties to say the contrary. The Court will effectuate the intention of the parties to a deed, if it can be done consistently with the rules of law. A deed in which there were no words of grant in the premises held sufficient to pass a fee from the words used in other parts of the deed.

THIS was a *real* action, in which *Bridge* demanded 75 acres of land, lying in *L.*, and declared that, on the 2d day of Dec. 1799, one *Jonathan Bridge* was seised of the demanded premises in fee, and on that day, by his deed of that date, conveyed the same to the *demandant* in fee, &c., and that, on the 1st day of April, 1802, the defendant entered and disseised the *demandant*, &c.

Plea—the general issue.

To prove his title, the counsel for the demandant offered in evidence the deed of *Jonathan Bridge*, mentioned in the declaration. Upon inspection, it appeared that the deed was in substance as follows, viz., " Know all men, &c., that I, *Jonathan Bridge*, in consideration of 666 dollars and 66 cents to me paid by *John Bridge*, a certain tract of land in *L.*, (describing it)—*Habendum* to *John Bridge* in fee—a covenant that he, *Jonathan Bridge*,
[ * 220 ] * was seised of the *granted* premises in fee, and had good right, &c., to *convey* the same *as aforesaid*, and that he and his heirs would warrant and defend the said *granted* and bargained premises to the *demandant*, his heirs and assigns, against the lawful claims and demands of all persons."

*T. Bigelow*, for the defendant, objected to the giving of the deed in evidence to the jury, because there were no words of conveyance in the premises to the deed. It was not, therefore, evidence of a grant to the *demandant* more than to any other person, and was, in fact, a mere nullity, and void. Immediately after the expression of the consideration having been received of *John Bridge*, the demandant, the deed goes on and describes a tract of land, and then follows the *habendum*, &c.; but there being no *grant*, there is nothing upon which the *habendum* can operate.

*Ward*, for the *demandant*, insisted that the intention of the parties was obvious. He conceded that the intention was to be collected from the words of the deed; but he said there could be no doubt from the words, taking the whole instrument together. In the first place, there was a valuable consideration expressed to have been received; then followed a description of the land demanded; next the *habendum* in fee, which was followed by the usual covenants, in which *Jonathan Bridge*, who executed the deed, had *considered* the premises as *granted*, and that by *express* words. And the Court would always give such a construction, if it could be done consistently with the rules of law, as would effectuate the intention of the parties.

The Court said they would admit the deed, *de bene esse*.

The defendant, to prove his title to the demanded premises, gave in evidence a deed of warranty from *Stephen Hartwell* and *his wife* to the defendant, * dated the 7th day of [ * 221 ] September, 1801, and also the deed of the above-mentioned *Jonathan Bridge* and his wife to said *Hartwell*, bearing date the 3d day of the *same month*. (The deed of *Bridge* and his wife was a *quitclaim*, containing covenants to defend against the claims of all persons claiming under *Jonathan Bridge*.) And it was contended that the deed of *Jonathan Bridge* to the *demandant* was fraudulent and void as to creditors, (it purporting on the face of it to be an absolute deed,) as it would be proved that *Hartwell*, at the time of executing the deed of *Jonathan Bridge* to the *demandant*, was a creditor of said *Jonathan*, and that the deed to *Hartwell* was made for the payment of debts due to him from said *Jonathan*, and that he, from the time of making the deed to the *demandant*, till the time of making the deed to *Hartwell*, had *remained in possession* of the demanded premises.

To prove these facts, the counsel for the defendant offered *Jonathan Bridge* as a witness.

The counsel for the *demandant* objected, because it appeared, by evidence already produced by the *defendant*, (viz. the deed of *Bridge* to *Hartwell*,) that the proposed witness was interested in the event of this suit. The counsel for the defendant then produced a release from *Hartwell* to *Jonathan Bridge*, and another from the defendant to him, executed in April last, releasing him from all demands on account of the covenants contained in his deed to *Hartwell*.

The counsel for the *demandant* then moved that *Jonathan Bridge* might be examined on the *voir dire*. This was opposed, because, as was insisted, the *demandant* had made his election by *proving the interest* in another way. It was replied, that he had not made his

election; nothing had been done but barely suggesting to the Court that the defendant himself had proved the interest of [ \* **222** ] *Jonathan Bridge,* \* by the deed which had been given in evidence by the defendant in proof of his own title.

The whole Court agreed as to the rule, that the party objecting to a witness had his election to examine him upon the *voir dire,* or to prove his interest otherwise; and THACHER, J., thought that the *demandant* had, in this case, made his election by offering the deed of *Bridge* to *Hartwell* as evidence of the interest of *Bridge* in the event of the suit; that it is immaterial from what source *proof* of interest arises, whether from the testimony of witnesses or from written evidence; that the *demandant's* counsel having proved, or attempted to prove, by the deed to *Hartwell,* (and which for this purpose is the *demandant's* own evidence,) the interest of the witness, they had waived the right of examining him on the *voir dire.* But the rest of the judges, viz., *Dana,* C. J., *Sedgwick,* and *Sewall,* justices, were of opinion that the *demandant's* counsel had not made their election by what had taken place in this instance. They agreed, however, that, after an attempt to prove the interest by other evidence, the party could not resort to the mode now offered; but they thought that this case, under its peculiar circumstances, (not an exception to the rule, for possibly there is no exception,) was not one where the party objecting had offered, or even attempted, to prove the interest of the witness. The counsel had done nothing more than to remind the Court that the defendant himself had proved the interest of the witness; that the counsel for the *demandant* had offered no evidence—they had not been even called upon to say in what way they would show the interest of the witness, whether by his own oath or by other evidence. They were therefore in favor of the motion. *Bridge* was accordingly sworn upon the *voir dire,* and denying any interest in the event of the suit, was sworn in chief.

[ \* **223** ]     \* The defendant then proved, by the testimony of *Bridge* and others, the facts above stated by his counsel, and that the deed of *Bridge and his wife* to *Hartwell* was executed and delivered to him on the land.

To rebut this evidence, and to show that the deed of *Jonathan Bridge* to the *demandant* was not fraudulent, that it was not made to delay or hinder *any* of the creditors of *Jonathan Bridge,* the counsel for the *demandant* proved, by *Jonathan Bridge,* that, at the time the deed to the *demandant* from *Jonathan Bridge* was executed, he was indebted to the *demandant* to the amount of nearly 1000 dollars; that the *demandant* had become bound for divers debts due from *Jonathan Bridge,* and had agreed to give him a bond accord-

ing to the terms of an agreement made between them at the time of the execution of the deed, conditioned to reconvey the land men tioned in the deed, which bond, the witness said, was not delivered to him till about seven or eight months afterwards, and that the rea son was because he, the witness, did not conceive the same to have been drawn according to the terms of the agreement, and therefore, although it had been repeatedly offered to him, he had refused to accept it, until seven or eight months after the execution of his deed, when he accepted the bond. The witness also testified that, at the time he made the deed to *Hartwell,* he, the witness, gave *Hartwell* notice of this previous conveyance to the *demandant,* and of the bond aforesaid ; and he further said that his deed to *Hartwell* was executed in *his,* the witness's, *then* dwelling-house, standing on the land in dispute, at which place the writings between them were drawn, and an adjustment made of the demands which *Hartwell* had against him ; but he knew of no reason for the business having been transacted there, excepting that it happened to be most convenient to the parties. The counsel * for the *demandant* now offered in evidence the bond [ * **224** ] from the *demandant* to *Jonathan Bridge,* bearing even date with the deed declared on, which bond was in the penal sum of 2000 dollars, and recited that the *demandant* had lent *Jonathan Bridge* 983 dollars and 21 cents, and was bound for the payment of his debts to the amount of 243 dollars and 33 cents more, and for his security had received the deed aforesaid, *bearing even date with the bond;* and was conditioned that, if *Jonathan Bridge,* his *heirs,* &c., should pay to the demandant the sum lent, and indemnify him on account of being bound as aforesaid, and pay, *yearly,* the interest of *all the sums* aforesaid, and should, within seven years, pay to the *demandant,* his executors, &c., the principal sum, that then the *demandant* would *reconvey* the land, &c.

This bond, it was said, was a defeasance of the deed to the de mandant, making him a mortgagee merely, and accounted for *Jonathan Bridge* having continued in possession of the land, it being the universal practice, in *this* state, for the mortgagor to remain in possession until condition broken.

The counsel for the defendant objected, because an estate exe cuted cannot be defeated by a defeasance made subsequent, as is the case here. If the deed declared on has any operation, it con veys an *immediate* estate in fee. The bond offered in evidence had its effect by the delivery, which was a long time subsequent to the execution of the deed, and therefore cannot operate as a defea sance.

The whole Court were, *at first,* of opinion that the bond could

not operate as a defeasance, it having been made subsequent to the deed; but they afterwards altered their opinion, and admitted it in evidence.

The cause was argued to the jury by the *Attorney-* [ * **225** ] *General* * for the defendant, and by *Parsons* for the *demandant;* but as the cause was argued very much at length, and many points made upon which the Court gave no opinion, it is not thought necessary to state the arguments.

DANA, C. J., summed up the evidence to the jury. He said that the Court gave no opinion relative to the operation of the deed of *Jonathan Bridge* to the *demandant,* so as it respected creditors, the Court not conceiving it to be necessary, because the defendant claims as a *purchaser.* The deed to *Hartwell* is clearly a release. If it could not operate as a release, (and it appeared to have been the intent that it should operate otherwise,) the Court would effectuate that intent, if it could legally be done. But it is not necessary to recur to that principle in the present case, because *Jonathan Bridge* had a *right* which might pass by release; and it does not appear, either from the deed or the evidence in the case, that he intended to convey to *Hartwell* the land itself. At the time of executing the deed to *Hartwell,* he, *Hartwell,* had notice of the deed to the *demandant,* and of the bond from him to *Jonathan Bridge.* As between the *demandant* and *Jonathan Bridge,* the right of redemption was in him for seven years. Whether the bond was or was not, in fact, executed on the day it purports to be dated, never could be contested by the *demandant* any where. Both the parties were bound by it. On a bill in equity for redemption, the *demandant's* mouth would be shut; so that here is most certainly an estate in mortgage. The facts being known to *Hartwell,* he could have no honest intention but to purchase the equity of redemption; and the transactions which took place between him and *Jonathan Bridge,* go clearly, in the opinion of the whole Court, to show what was the intention of both parties. The [ * **226** ] Court give no opinion whether any * thing *passed* by the release; for either the quitclaim, the release, passes all the right which *Jonathan Bridge* had, *viz.,* the equity of redemption, or it is merely void, and passes nothing. Take it either way, the demandant is entitled to recover.

The jury found for the demandant.

The counsel for the defendant moved for a new trial, assigning for reasons, *First,* that the deed from *Jonathan Bridge* to the *demandant* ought not to have been admitted in evidence, *secondly,* because the Court directed the jury that the bond in evidence

operated to make the conveyance to the *demandant* a mortgage, when in fact it did not—but which, if true, destroyed the *demandant's* action, because judgment therein could not be rendered as on mortgage, he having declared upon an absolute estate in fee, and made his demand accordingly ; and *thirdly*, because, admitting the *demandant* to be a mortgagee, and that judgment as upon mortgage might be rendered upon a declaration in the form of the present, yet the term of seven years from the date of the deed and bond has not elapsed, and therefore the demandant has not such cause of action as he has alleged. He has brought his suit before any cause of action had accrued.

*Parsons*, for the demandant, in answer to the *first* reason assigned in the motion for a new trial, and to show that the deed to the *demandant* was sufficient to pass the estate, cited 3 *East, Spyve* vs. *Topham.*—10 *Mod. Rep.* 40, 41, *Say & Seale.*—*Allen*, 41, *Edes* vs. *Lambert.*

To the other reasons, he said, that, as to the operation of the bond, he did not think it necessary to make any reply ; but the declaration makes a *profert* of the deed, which is all that is required by the Court on the *demandant's* part. The opposite party may file his bond of defeasance, and so have the judgment entered correctly. As to the * objection that seven years from [ * **227** ] the date of the mortgage have not elapsed, there was a breach of the condition by not paying annually the interest of the sum mentioned therein, and therefore the *demandant* was *now* entitled to his action for the land. (1)

*By the Court.* The rule, that where the intention of the parties can be discovered by the deed, the Court will carry that intention into effect, if it can be done consistently with the rules of law, is founded in good sense, and ought always to govern us. Taking the whole deed together, is it possible to doubt as to the intention ? (*a*) that the intention was to pass the estate to the *demandant* in fee ? If there be no doubt on that point, the next question is, whether there be any rule of law to prevent our carrying that intention into effect. If there be, the Court must stop ; but we find no such rule—no rule to prevent the Court from giving effect to the deed. On the contrary, the authorities cited justify us in saying that the deed is sufficient to convey the estate in fee to the *demandant.*

*New trial refused.*

(1) It is now settled that a mortgagee is entitled immediately and before condition broken to enter upon the mortgaged premises ; and he may bring trespass against the mortgagor if he refuse to quit the possession.—*Newall* vs. *Wright*, post vol. iii. p. 138.

(*a*) ⌐But *quod voluit non dixit*. The deed was clearly void.—ED.]

The Court gave no opinion as to the other points, but said that the counsel for the *demandant* would enter up judgment at their own risk.

The judgment was entered as on mortgage.